**S**INGH, **S**INGH & **T**RAUBEN, LLP
**M**ICHAEL **A. T**RAUBEN (SBN: 277557)
 mtrauben@singhtraubenlaw.com
**T**HOMAS **K. R**ICHARDS (SBN: 310209)
 trichards@singhtraubenlaw.com
400 S. Beverly Drive, Suite 240
Beverly Hills, California 90212
Tel: 310.856.9705 | Fax: 888.734.3555

*Attorneys for Plaintiff*
TOWER ENTERTAINMENT CORP.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT

| | |
|---|---|
| TOWER ENTERTAINMENT CORP., a Puerto Rico corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>YEMANI GROUP, S.L., a Spain corporation, and DOES 1 through 20, inclusive,<br><br>    Defendants. | Case No.: **2:23-cv-7803**<br><br>**PLAINTIFF'S COMPLAINT FOR**<br><br>  1. **BREACH OF CONTRACT;** *and*<br>  2. **ACCOUNTING**<br><br>**DEMAND FOR TRIAL BY JURY** |

Plaintiff TOWER ENTERTAINMENT CORP. ("**Tower Entertainment**" or "**Plaintiff**"), by and through its undersigned counsel, hereby sues defendant YEMANI GROUP, S.L. ("**Yemani**") and DOES 1 through 20, inclusive (collectively, "**Defendant**"), and in support thereof states as follows:

## NATURE OF ACTION

1. This is a civil action for breach of contract and an accounting arising out of Defendant's breaches of a written services agreement entered into by and between Plaintiff and Defendant. Defendant has and continues to repeatedly breach several critical and material agreed-upon terms of the services agreement by failing to, among other things, secure the necessary production elements for the live shows in accordance with the terms of the parties' agreement.

## THE PARTIES

2. Plaintiff Tower Entertainment is a corporation organized and existing under the laws of Puerto Rico, with its principal place of business in San Juan, Puerto Rico.

3. Upon information and belief, Defendant Yemani is a corporation organized and existing under the laws of Spain, with its principal place of business in Alacant, Spain.

4. The true names and/or capacities, whether individual, corporate, associate or otherwise of Defendants 1 through 20, inclusive, are unknown to Plaintiff at this time, and Plaintiff, therefore, sues said Defendants by such fictitious names. Plaintiff is informed and believes and thereupon alleges that each of the Defendants fictitiously named herein as a DOE is legally responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to and that the acts and omissions of said Defendants were a legal cause of the resulting injury and damages to Plaintiff as hereinafter alleged. Plaintiff will amend this Complaint to assert the true names and/or capacities of such fictitiously named Defendants when the same have been ascertained.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1332 because there exists complete diversity between the parties and the amount in

controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## ALLEGATIONS COMMON TO ALL CLAIMS

7. Plaintiff Tower Entertainment is a management company that manages and oversees the careers of various musical artists, including Raúl Alejandro Ocasio Ruiz p/k/a Rauw Alejandro ("**Rauw**" or "**Artist**").

8. Rauw is a Puerto Rican singer and songwriter. He is considered one of the most important artists in Latin urban music today, and has achieved great international success with his songs, which combine elements of reggaeton, pop, and dancehall.

9. Rauw's song "Todo de Ti" was the most streamed song on Spotify in 2021, with over 2 billion streams. Rauw's album "Vice Versa" debuted at number 17 on the Billboard 200 chart. The album has been certified 8x platinum by the RIAA, with over 500,000 units sold in the United States.

10. Rauw has won numerous awards, including the Latin Grammy Award for Best Urban Song for "Todo de Ti" and the Billboard Music Award for Top Latin Artist.

11. In or around the fourth quarter of 2022, and based upon Yemani Group's representations regarding its ability to effectively produce a musical tour featuring Rauw consisting of eight (8) shows across Spain, Tower Entertainment and Yemani Group entered into a written professional services contract (the "**Tour Agreement**"). A true and correct copy of the Tour Agreement is attached hereto as **Exhibit "A"**.

12. Pursuant to paragraph 1 of the Tour Agreement, Yemani Group agreed to pay Tower Entertainment a guaranteed minimum amount of $4,000,000 (or $500,000 per each of the eight (8) shows).

13. Pursuant to paragraph 1 of the Tour Agreement, Yemani Group further agreed to pay Tower Entertainment seventy percent (70%) of the net profits of each of the shows.

14. Pursuant to paragraph 2(a) of the Tour Agreement, Yemani Group agreed to pay Tower Entertainment 50% of the guaranteed minimum ($2,000,000) within five days

of the Tour Agreement's execution.

15. Pursuant to paragraph 2(b) of the Tour Agreement, Yemani Group agreed to pay Tower Entertainment the remaining 50% payment per show (i.e. $250,000) not less than one (1) week prior to each show.

16. Pursuant to paragraph 3 of the Tour Agreement, Yemani Group was contractually obligated and responsible for "complying with the requirements of audio, video, lighting, and all other production equipment of the Shows required by The Company."

17. Pursuant to paragraph 7(d) of the Tour Agreement, "[i]n case of cancellation for any other reason of any Show by [Yemani Group] during the 60 days prior to the Show, [Tower Entertainment] will keep 100% of the deposit that [Yemani Group] has paid corresponding to said Show and any remaining part of the minimum deposit per Show that has not been paid will become immediately due to [Tower Entertainment]."

18. Pursuant to paragraph 8 of the Tour Agreement, "[i]n the event that [Yemani Group] fails to comply with the terms agreed in writing in this contract, it will bear all expenses incurred by [Tower Entertainment]."

19. Shortly after the execution of the Tour Agreement, the parties agreed upon a tour schedule, confirming eight (8) shows commencing on August 26, 2023 in Valencia up and through September 16, 2023, the date of the last show at Costa Adeje Golf in Tenerife, Spain (the "**Tenerife Show**").

20. Initially, Yemani Group performed pursuant to the terms of the Tour Agreement, producing the first set of shows pursuant to Tower Entertainment's specifications and list of requirements as detailed in Tower Entertainment's "Technical Rider".

21. In connection with the Tenerife Show, and pursuant to paragraph 2(b) of the Tour Agreement, Yemani Group failed and/or refused to pay Tower Entertainment the remaining 50% payment (i.e. $250,000) at least one (1) week prior to the September 16, 2023 show date (i.e. on or before September 9, 2023).

22. To date, of the $3,500,000 guaranteed sum due and owing to Tower Entertainment (reduced by $500,000 as a result of a force majeure event in connection with one of the shows), Yemani Group has only paid Tower Entertainment the sum of $2,000.000.

23. On or around September 13, 2023, Yemani Group informed Tower Entertainment that it would not be able to fulfill its contractual production obligations in connection with the Tenerife Show.

24. Based upon Yemani Group's material failure to secure the necessary production elements for the Tenerife Show, the parties were forced to cancel the Tenerife Show.

25. All conditions precedent to the institution of this action have been satisfied, discharged, excused, and/or waived.

## COUNT I
## BREACH OF CONTRACT
### *(By Plaintiff as Against Defendants)*

26. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 25 as if fully set forth herein.

27. Plaintiff has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the parties' Tour Agreement.

28. Nonetheless, Defendant has failed and/or refused to perform its promises and obligations under the Tour Agreement, including to pay Plaintiff the outstanding sum of $1,500.000.

29. Further, Defendant's inability to ensure the availability of vital production equipment in a timely manner not only occasioned significant financial losses to Plaintiff but also severely tarnished the Plaintiff and Artist's professional reputations. Plaintiff had invested substantially in marketing, promotions, and other logistical preparations, all of which were rendered futile due to the Defendant's negligence and contractual breaches.

This failure has resulted in irreparable damage to the Plaintiff's standing in the entertainment industry, manifested through lost business opportunities, strained business relationships, and a diminished brand value, the quantifiable extent of which is still being ascertained.

30. Defendant has further willfully and materially breached the Tour Agreement by refusing to pay Plaintiff seventy percent of the Net Profits derived from the shows pursuant to paragraph 1(g) of the Tour Agreement.

31. As a direct and proximate result of Defendant's material and continuing breaches of the Tour Agreement, Plaintiff has been damaged in an amount no less than $1,500.000, plus prejudgment interest at the statutory rate.

## COUNT II
## ACCOUNTING
### *(By Plaintiff as Against Defendants)*

32. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 31 as if fully set forth herein.

33. Defendant has further willfully and materially breached the Tour Agreement by refusing to pay Plaintiff seventy percent of the Net Profits derived from the shows pursuant to paragraph 1(g) of the Tour Agreement.

34. As the Net Profits involve, among other things, an extensive calculation of "all amounts earned, credited and/or received by" Defendant in connection with the tour, and Defendant has, to date, failed and/or refused to provide any such accounting to Plaintiff, it is not clear that the remedy at law would be as full, adequate, and expeditious as it is in equity.

35. Accordingly, Plaintiff is in need of and requests a full accounting of all amounts earned, credited, and/or received by Defendant in connection with the Tour Agreement and for such other relief as the Court may deem just and proper.

///

///

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the entry of Judgment in its favor and against Defendant as follows:

a. For not less than $1,500,000.00;

b. For all actual, general, special, economic, and compensatory damages according to proof at trial, or as otherwise permitted by law;

c. For an accounting of all amounts earned, credited and/or received by Defendant in connection with the Tour Agreement;

d. For prejudgment and post-judgment interest on all damages, at the legal rate;

e. For costs of suit incurred herein; *and*

f. For all such other relief as the Court deems just and proper

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues in this action so triable.

DATED: September 19, 2023

Respectfully submitted,

SINGH, SINGH & TRAUBEN, LLP
MICHAEL A. TRAUBEN

By: _____
Michael A. Trauben

*Attorneys for Plaintiff*
TOWER ENTERTAINMENT CORP.